IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                       )<br>)<br>BRYANT MARCUS WILKERSON, )<br>a/k/a "Kobe"                           )<br>)<br>Defendant.                           ) | CRIMINAL NO. 2:22-CR-152 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Marc W. West, Special Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable advisory guidelines range to be a term of 130 to 162 months, plus 204 months consecutive, imprisonment, based on a Total Offense Level of 27 and a Criminal History Category of VI.

In accordance with §6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The United States does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation and understands there to be two unresolved objections, which are addressed herein.

For the reasons outlined herein and after consideration of the PSR, the relevant conduct associated with this crime, the defendant's history and characteristics, and the defendant's criminal record, the United States respectfully seeks and submits that an aggregate sentence of 300 months is appropriate, warranted, and not greater than necessary to accomplish the goals of 18 U.S.C.

§ 3553(a).

**I.    Motions**

The United States moves this Court, pursuant to U.S.S.G. §3E1.1(b), to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

**II.    Background**

On March 9, 2023, the defendant was charged in an eleven-count Superseding Indictment alleging five carjacking-related offenses, three use of a firearm during crimes of violence related offenses, one stolen motor vehicle related offense, and two firearms by felon related offenses. ECF No. 15. Counts 1, 3, 4, 6 & 9 charged the defendant with Carjacking and Attempted Carjacking, in violation of 18 U.S.C. § 2119. Counts 2, 5, & 7 charged the defendant with Discharge, Brandish, Carry, and Use Firearm During and in Relation to Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) & (iii). Count 8 charged the defendant with Interstate Transportation of Stolen Motor Vehicle, in violation of 18 U.S.C. § 2312. Counts 10 & 11 charged the defendant with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On May 17, 2023, in accordance with the terms of a written plea agreement, the defendant appeared before United States Magistrate Court Judge Robert J. Krask and pled guilty to Counts Four, Five, Six and Seven of the eleven-count Superseding Indictment. The Court accepted his guilty plea and the sentencing was continued before the Honorable Arenda L. Wright on October 19, 2023.

### III. <u>Criminal History Computation</u>

The United States submits that the guidelines are correctly calculated pursuant to current law. However, on November 1, 2023, an expected retroactive amendment to the federal Sentencing Guidelines will eliminate (for defendants with six or fewer criminal history points) or reduce to one point (for defendants with seven or more criminal history points) the status points added to a defendant's criminal history score for those who committed their offense while under a criminal justice sentence.

The defendant committed the instant offenses while under numerous criminal justice sentences, including supervised probation for many of his prior felony convictions. Therefore, two points were added to the defendant's criminal history score pursuant to U.S.S.G. §A1.1(d). For judicial economy, the United States would ask the Court to remove the two points, add one point back pursuant to the expected retroactive amendment, and adjust the defendant's criminal history score from twenty-five to twenty-four. This would not adjust the defendant's criminal history category from VI, or change the sentence range, but would negate the need for this issue to be litigated in the future. The United States would ask the Court to place in the Statement of Reasons that the reason the defendant's criminal history score was adjusted was in response to this request based on the expected November 1, 2023, retroactive amendment to the federal Sentencing Guidelines, as previously stated.

### IV. <u>Defendant's Objections</u>

The defendant has two objections – both of which potentially impact guidelines calculations as determined by the United States Probation Office. First, the defendant objects to the two-level enhancement for U.S.S.G § 2B3.1(b)(4)(B) for the victim being "physically restrained" during the Count 4 Carjacking. PSR ¶ 30. The defendant also objects to the two-level

enhancement for U.S.S.G § 2B3.1(b)(4)(B) for the victim being "physically restrained" during the Count 6 Carjacking. PSR ¶ 43.

    A.  <u>Victim Being Physically Restrained During Count 4 Carjacking</u>

The United States submits that the guidelines are correctly calculated pursuant to current law. Fourth Circuit caselaw is clear. In *United States v. Baylor*, the Court held that, "Regardless of how other circuits view this issue, in the Circuit the law is clear that the use of a gun to restrain a victim may constitute physical restraint within the meaning of § 2B3.1." *United States v. Baylor*, 296 Fed.Appx.360, 362 (4th Cir. 2008). *See also United States v. Wilson*, 198 F.3d 467 (4th Cir. 1999) (the district court properly applied the U.S.S.G. § 2B3.1(b)(4)(B) physical restraint enhancement when a gun was held to the victim's head, and she was briefly prevented from leaving her car until the defendants were able to get her money and gain control of her car).

In the Count 4 Carjacking, the defendant pointed a firearm in the face of A.B. to get A.B. out of the vehicle, so that the defendant could steal the vehicle. This conduct clearly constitutes physical restraint under the precedent caselaw, so the government respectfully asks this Court to deny the objection.

    B.  <u>Person Being Physically Restrained During Count 6 Carjacking</u>

The United States submits that the guidelines are correctly calculated pursuant to current law. In the Count 6 Carjacking, the defendant was on the hood of the vehicle when he pointed a firearm at P.D. and ordered him to get out of the vehicle. P.D. did not comply so the defendant discharged his firearm into the dash of the vehicle before pointing the firearm at P.D. again and ordering P.D. to get out of the vehicle. P.D. then got out of the vehicle so that the defendant could steal it. Once again, this conduct clearly constitutes physical restraint under the precedent caselaw, so the government respectfully asks this Court to deny the objection.

V.     **Position on Sentencing and Argument**

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

Under 18 U.S.C. § 3553(a), when imposing a sentence that is sufficient but not greater than necessary, the Court shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed (to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner), (3) the kinds of sentences available, (4) the sentencing guideline range, (5) any pertinent policy statement issued by the Sentencing Commission, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

5

A. <u>Nature and Circumstances of the Offense – 18 U.S.C. § 3553(a)(1)</u>

The nature and circumstances of these offenses are extremely serious. On November 3, 2020, at approximately 7:36 p.m. in Chesapeake, Virginia, in the Eastern District of Virginia, the defendant approached A.B. who was sitting inside his red 2015 Kia Optima after leaving work. Before A.B. could close the driver side door of the vehicle, the defendant stood in between the door and the driver seat and told A.B., "You're going to get out of the fucking car or I'm going to shoot you." A.B. initially stayed in the vehicle. The defendant produced a firearm and pointed it at A.B.'s face. The defendant then struck A.B. in the face with the firearm. After A.B. exited his vehicle, the defendant got in the driver's seat and drove away. ECF No. 31.

After the initial carjacking on November 3, 2020, the defendant drove to another location in Chesapeake, Virginia. He approached P.T., who was sitting in his vehicle, and told P.T., "Cut the car off and get out of the car, and if you don't, I'll shoot you." P.T. put the vehicle in reverse and attempted to leave the area. As he was leaving, he heard a gunshot. There were no bullet holes found in the vehicle. PSR ¶ 10.

On November 4, 2020, the Kia Optima was found unoccupied in Virginia Beach. The Virginia Beach Police Department processed the Kia Optima for fingerprints and found one latent print matching the defendant's fingerprint on the exterior of the rear driver side door. Additionally, A.B. identified the defendant in a photo lineup. ECF No. 31.

On November 9, 2020, around 9:40 a.m., T.W. was seated in his/her vehicle in Currituck, North Carolina, when the defendant opened the passenger side door and pointed a firearm at T.W. The defendant told T.W. to get out of the vehicle. T.W. did not comply so the defendant got into the vehicle and placed the barrel of the firearm in the chest of T.W. T.W. exited the vehicle and the defendant attempted to start the vehicle, but it would not start since the fob was with T.W. The

6

defendant exited the vehicle and got into a Ford Explorer Sport Track parked at the 7-11, with the engine running, and fled the scene. PSR ¶ 11.

Deputies from the Currituck County Police Department attempted to stop the defendant driving the Ford Explorer Sport Track, but the defendant ignored their commands and a vehicle pursuit ensued. During the pursuit, the defendant drove over 80 miles per hour, drove into oncoming traffic, ran other vehicles off the road, and used the center turn lane to pass other vehicles. PSR ¶ 11. The defendant then fled from the vehicle and ran on foot into a wooded area along Caratoke Highway in North Carolina. After some time, the defendant ran from the wooded area back onto the roadway. As he ran, he pointed a firearm at vehicles travelling south on Caratoke Highway. The defendant eventually approached a white 2009 Chevrolet Silverado with an attached trailer driven by P.D. The defendant jumped on the hood of the vehicle, pointed a firearm at P.D., and told him to get out of the truck. The defendant then fired a round into the dash of the truck. The defendant jumped off the hood and ran to the driver's door. The defendant opened the door and pointed the firearm at P.D. again. P.D. got out of the truck; the defendant got in and drove away. ECF No. 31.

Law enforcement officers continued to chase the defendant after he stole the Chevrolet Silverado. During this vehicle pursuit, the defendant was traveling at speeds up to 107 miles per hour on the expressway in Chesapeake, Virginia. At one point, the defendant's vehicle struck a dump truck owned by Currituck Grain, Inc. As he approached the toll plaza, the defendant crossed the grass median and drove in the wrong direction on the expressway. Spike strips were deployed which flattened several tires. After going past the toll plaza, the defendant came to a stop solely because the tires were flat. The defendant then fled on foot. PSR ¶ 12.

While fleeing on foot, the defendant approached citizen #1, pointed a firearm at him/her,

and asked if keys were inside his/her vehicle. The citizen said "yes" and the defendant entered the vehicle but determined that no keys were in the vehicle. The defendant then fled to a neighbor's residence where he broke into a locked vehicle owned by M.A. PSR ¶ 12. Officers found the defendant and removed him from the back seat of the vehicle. A Glock 19 9mm handgun was located in the back seat of the vehicle from which the defendant was removed. ECF No. 31.

On April 21, 2022, officers were attempting to serve a Protective Order on the defendant and serve outstanding warrants on him after he escaped from Eastern State Hospital while in custody on state charges. They went to his home address and the defendant gave the officer alias information for his name, date of birth and social security number. He was eventually identified and he told the officer that he had a firearm in his pants between his butt cheeks and genital area. A loaded Smith and Wesson 40 caliber firearm was recovered from the defendant. PSR ¶ 13.

    B)    <u>History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)</u>

        1.    Personal and Family Data

The defendant is thirty years old and his overall general health is good, although he has been diagnosed with Hepatitis C. PSR ¶ 108. The defendant has a long history of mental and emotional health problems. He has been diagnosed with depression, post-traumatic stress disorder, anxiety disorder, Major Depressive Disorder, Substance Abuse Induced Anxiety, Psychotic Disorder, Antisocial Personality Disorder, adjustment disorder, alcohol use disorder, and heroin use disorder. He received treatment at the Virginia Beach and Norfolk Community Service Boards between 2026 and 2018 and has been sent to Eastern State Hospital on several occasions. PSR ¶¶ 109 - 111. The United States respectfully recommends that the defendant receive a mental health evaluation and treatment while he is housed in the Bureau of Prisons.

The defendant dropped out of school in 2010, while in the eleventh grade, and later earned

his General Educational Development diploma in 2016. He also completed some classes in automotive technician from 2007 until 2011. PSR ¶¶ 114–16. The defendant's employment history is sporadic and interrupted by periods of incarceration. He has worked in several restaurants as a cook as well as a housekeeper at a hotel. On several occasions the defendant was terminated for failing to show up for work and/or coming to work under the influence. PSR ¶¶ 117-23. The United States respectfully recommends that the defendant receive educational and vocational training while he is housed in the Bureau of Prisons.

The defendant has a long history of substance abuse. He started using marijuana at the age of 13, moved on to cocaine when he was around 18 years old, moved on to heroin when he was 19 years old, and used that drug almost daily until his arrest. PSR ¶ 112. The United States respectfully recommends that the defendant receive substance abuse treatment while he is housed in the Bureau of Prisons.

2.   Criminal History

The defendant's criminal history is significant and comprises nearly eleven pages of the PSR. His criminal history began when he was 18 years old, when he was convicted of Criminal Possession of a Controlled Substance – 7th Degree in Nassau County, NY. PSR ¶ 66. Less than a year later, he was convicted again of the same offense in the same location. PSR ¶ 67. Less than two years later, at the age of 21, the defendant was convicted of Operating a Vehicle While License Suspended in Palm Beach, FL, and three years after that he was convicted of Burglary in the Norfolk Circuit Court. PSR ¶¶ 68 – 69. Less than two years later, and while still on probation for the Burglary conviction, the defendant was convicted of felony Unauthorized Use of a Motor Vehicle and three counts of Resisting Arrest in the Virginia Beach Circuit Court. PSR ¶¶ 70–71. Later that same year, the defendant was convicted on several different dates for several counts of

Possession of a Schedule I or II Drug, Possession of Controlled Paraphernalia, and Petit Larceny in the Virginia Beach Circuit Court. PSR ¶¶ 72–74. Several months after those convictions, the defendant was convicted of Grand Larceny in the Suffolk Circuit Court and, several months after that, he was convicted of two counts of Failure to Appear in the Suffolk Circuit Court and Grand Larceny in the Norfolk Circuit Court. PSR ¶¶ 75-78. Several months later, the defendant was convicted of Inmate Tampering with a Fire System in a Jail, Grand Larceny, and Failure to Appear in the Chesapeake Circuit Court. PSR ¶¶ 79–81. Finally, the defendant was convicted several months later of Prisoner Escape Without Force in the Williamsburg/James City County Circuit Court. PSR ¶ 82.

It is worth noting that the defendant committed the instant offenses while under numerous criminal justice sentences, including supervised probation for Possession of a Schedule I or II Drug, Burglary, Unauthorized Use of a Motor Vehicle, Possession of a Schedule I or II Drug and three counts of Resisting Arrest. PSR ¶ 84.

C) <u>Relevant Sentencing Factors Outlined in 18 U.S.C. 3553(a)(2)</u>

The sentence imposed should reflect the seriousness of the offense, promote respect for the law, and provide a just punishment for the offense. It should also afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The seriousness of the defendant's offenses cannot be overstated. Using a firearm to commit multiple carjackings, striking a victim in the face with a firearm, shooting into the dashboard of a vehicle while committing a carjacking, and leading law enforcement on multiple high-speed chases is about as dangerous and serious as it gets. The defendant's actions could very

easily have led to serious bodily injury, or even death. The government submits that the recommended sentence reflects the seriousness of the offenses, would promote respect for the law, and provide a just punishment for the offenses.

At this point in the defendant's lengthy criminal career, the recommended sentence is necessary to deter the defendant from engaging in this type of criminal conduct ever again. It is clear to the government that the defendant's previous sentences in state court did nothing to deter him from committing the instant offenses. The government submits that the length of the recommended sentence is necessary to get the message across to the defendant that this type of behavior is unacceptable. Furthermore, the recommended sentence is necessary to protect the public from further crimes of the defendant. The defendant has been in virtually continuous trouble with the criminal justice system since he was 18 years old, with his conduct now escalating to violent criminal actions. At some point, when a person shows absolutely no sign of ending his or her criminal conduct, that person needs to simply be removed from society to protect the public.

Finally, the recommended sentence is needed so the defendant can better himself in the Bureau of Prisons. The defendant can take advantage of all they have to offer and hopefully, finally, come to the decision that his criminal ways are over.

## VI.   Conclusion

Taking all the Section 3553(a) factors into account, the government submits that an aggregate sentence of 300 months is appropriate and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Marc W. West
Special Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6338
Facsimile Number: 757-441-6689
marc.west@usdoj.gov


**CERTIFICATE OF SERVICE**

I certify that on October 12, 2023, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

I also certify that on October 12, 2023, I sent by electronic mail a true and correct copy of the foregoing to the following:

**Jeffrey A. Noll**
Senior United States Probation Officer
600 Granby Street, Suite 200
Norfolk, Virginia 23510
(757) 222-7300

By: _____
Marc W. West
Special Assistant United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number:     (757) 441-6338
Facsimile Number:  (757) 441-6689
marc.west@usdoj.gov

12